STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-05-259
*MMM - KEN - 3,29,2010*

SHAWN M. ALLAIRE

Plaintiff

v.

**DECISION AND ORDER**

STATE OF MAINE
And
ANNE H. JORDAN
Commissioner, Maine Department of Public Safety

Defendants

This case is before the court on cross-motions for summary judgment. This order takes up the issues upon which the court had reserved ruling pending the outcome of *State v. Letalien*, 2009 ME 130, 985 A.2d 4, and the resulting legislative amendments to the Sex Offender Registration and Notification Act ("SORNA"), 34-A M.R.S. §§ 11201-256 (2009) *amended by* P.L. 2010, ch. 570 (emergency, effective March 30, 2010).

**I. Facts**

The parties have stipulated to the following facts. At all times relevant to this matter, the plaintiff was a Maine resident. (Stip.S.M.F. ¶ 1.) On June 26, 1999, the plaintiff was working at the Sunglass Hut in a mall in Newington, New Hampshire, when a young female, B.P., stopped by to visit him. (Stip.S.M.F. ¶ 5.) In the dressing room of a store in the mall, the plaintiff and B.P. engaged in "heavy petting," during which the plaintiff digitally penetrated B.P.'s vagina. (Stip.S.M.F. ¶¶ 7, 8.) The plaintiff did not know B.P.'s age at the time. (Stip.S.M.F. ¶ 11.) He learned that B.P. was fourteen years old approximately one week after their dressing room encounter, when he received a telephone call from a detective with the Newington police department. (Stip.S.M.F. ¶ 13.)

On September 8, 1999, the plaintiff was indicted by a New Hampshire grand jury for felonious sexual assault. (Stip.S.M.F. ¶¶ 14, 16.) The indictment alleged in pertinent part that the plaintiff "knowingly . . . engaged in sexual penetration with B.P., (d.o.b. 12/26/84) . . . who was at the time 13 years of age or older and under 16 years of age . . . specifically, by causing an

intrusion of his finger into the genital opening of B.P.'s body . . . ." (Stip.S.M.F. ¶ 17.) On October 7, 1999, represented by counsel, the plaintiff waived formal arraignment and entered a plea of "not guilty." (Stip.S.M.F. ¶ 19.) On August 11, 2000, on the advice of his attorney, the plaintiff entered an open plea of guilty to felonious sexual assault in the Rockingham County Superior Court. (Stip.S.M.F. ¶¶ 26-28.) As a result of his guilty plea, the plaintiff was sentenced to twelve months in the Rockingham County House of Corrections and two years' probation. (Stip.S.M.F. ¶ 29.) The plaintiff testified that his criminal defense attorney never told him that he would be required to register as a lifetime registrant under New Hampshire's sex offender notification act. (Stip.S.M.F. ¶ 31.)

The plaintiff first learned that he was required to register as a lifetime registrant under New Hampshire's sex offender notification act the day he was released from the Rockingham County House of Corrections. (Stip.S.M.F. ¶ 32.) He then returned to Maine, where the State of Maine notified him that he was required to register as a lifetime registrant under Maine's SORNA because his New Hampshire conviction for felonious sexual assault made him a lifetime registrant under New Hampshire law. (Stip.S.M.F. ¶¶ 33, 34, 36.) The plaintiff then completed and mailed a "Notice of Duty to Register" which identified him as a "Lifetime Registrant" under SORNA of 1999, although he had previously registered in Maine as a ten-year registrant. (Stip.S.M.F. ¶ 39, 40.) A State of New Hampshire "Offender Registration Information" form dated January 25, 2001, states that the plaintiff must register annually for life, and identifies his qualifying offense as "Aggravated Felonious Sexual Assault," as well as the "Felonious Sexual Assault" of which the plaintiff testified he was convicted. (Stip.S.M.F. ¶¶ 41-43.) The plaintiff alleges that the registration requirement negatively affects his employability (Stip.S.M.F. ¶¶ 45, 47) and that he is frightened by the killing of two people listed on Maine's Sex Offender Registry Website (Stip.S.M.F. ¶48).

II. Analysis

A. Arguments and Statutory Scheme

The plaintiff's motion for summary judgment asserts that the State of Maine lacks the power to require the plaintiff to register pursuant to SORNA for the following reasons: (1) application of SORNA to the plaintiff runs afoul of the prohibition on ex post facto laws, *see* U.S. Const. art. I. § 10, cl. 1 and Me. Const. art. I, § 11; (2) application of SORNA to the plaintiff violates the prohibition against cruel and unusual punishment, *see* U.S. Const. amend.

2

VIII and Me. Const. art. I, § 9; (3) application of SORNA to the plaintiff violates the prohibition against double jeopardy; *see* U.S. Const. amend. V and Me. Const. art. I, § 8; and (4) application of SORNA to the plaintiff violates the plaintiff's due process rights under the Maine and United States constitutions. In response to *Letalien* and the subsequent statutory amendments, the plaintiff argues that SORNA remains a violation of ex post facto constitutional provisions, and also offers two cases from other jurisdictions in support of his argument that he need not register in Maine because his offense, committed in New Hampshire, is not "substantially similar" to a registry-eligible offense in Maine. The defendants object to the plaintiff's motion and cross-move for summary judgment in their favor.[1]

The specific provision of the statute to which the plaintiff objects is encoded at 34-A M.R.S. § 11202(2)(a) (2009), which explains that SORNA applies to "A person sentenced in another jurisdiction as an adult or as a juvenile sentenced as an adult . . . [a]t any time of an offense that requires registration in the jurisdiction of conviction pursuant to that jurisdiction's sex offender registration laws or that would have required registration had the person remained there . . . ." Under New Hampshire law, a conviction for Felonious Sexual Assault (N.H. R.S.A. 632-A:3 (Supp. 2009)) would render the plaintiff a "Tier II offender" (N.H. R.S.A. 651-B:1, IX (Supp. 2009)); a conviction for Aggravated Felonious Sexual Assault (N.H. R.S.A. 632-A:2 (Supp. 2009)) would render him a "Tier III offender." N.H. R.S.A. 651-B:1, X (Supp. 2009). "All tier II or tier III offenders shall be registered for life." N.H. R.S.A. 651-B:6, I (Supp. 2009). Accordingly, the plaintiff is subject to lifetime registration in New Hampshire. He contends that Maine's statute imposing the same registration status in Maine based upon his New Hampshire registration status is unconstitutional.

Maine is one of sixteen U.S. jurisdictions to adopt an external approach to registration of foreign convictions for sex offenses. Wayne A. Logan, *Horizontal Federalism in an Age of Criminal Justice Interconnectedness*, 154 U. PA. L. REV. 257, 287 (2005). "[E]xternal approach states require registration if the foreign jurisdiction where the conviction occurred required registration, regardless of whether it would warrant registration in the forum." *Id.*; *see* Comm. Amend. A to L.D. 1433, No. H-997 (122nd Legis. 2005) (describing amendment as changing "the application section to honor other jurisdictions' determinations with respect to the obligation

---

[1] This court previously rejected the defendants' argument that the Full Faith and Credit clause of the federal constitution requires Maine to recognize and enforce New Hampshire's classification of the plaintiff's sex offender status. *See Allaire v. State*, KENSC-CV-2005-259 (Me. Super. Ct., Ken. Cty., Jun. 25, 2009) (Murphy, J.).

3

of offenders to register"). This statutory structure, granting comity to foreign jurisdictions' judgments, has been consistently upheld. *See, e.g., Flowers v. Arkansas*, 213 S.W.3d 648, 651 (Ark. App. 2005) ("Arkansas law plainly provides that one who is convicted of a crime in another state and is required to register in that state as a sex offender is also required to register in Arkansas. . . . [I]t is simply immaterial whether Arkansas would punish" the underlying offense in the same way as the foreign jurisdiction that convicted the registrant); *New York v. Arotin*, 796 N.Y.S.2d 743, 745 (N.Y. App. Div. 2005) ("The administrative manner in which a state chooses to exercise the registration requirements for a sex offender who moves into its jurisdiction falls squarely within the power of that state and is not governed by the procedures in effect in the state where the offender previously resided."). For this reason, the cases that the plaintiff cites, *State v. Howe*, 212 P.3d 565 (Wash. App. Div. 2 2009) and *Ex Parte Harbin*, 297 S.W.3d. 283 (Tex. Crim. App. 2009) are inapplicable: Washington and Texas have adopted an "internal" approach, "requiring that newly arrived ex-offenders register in the forum only if the foreign predicate comes within the ambit of registerable offenses specified by the forum." Wayne A. Logan, *Horizontal Federalism in an Age of Criminal Justice Interconnectedness*, 154 U. PA. L. REV. 257, 284 (2005). The fact that the legislatures of Washington and Texas have limited their states' registration requirements in this way does not affect this court's analysis of the constitutionality of the Maine legislature's "external approach."

For the purposes of this analysis only, the court accepts the parties' representation that the incident underlying the plaintiff's conviction for Felonious Sexual Assault does not represent a crime in Maine. The plaintiff's motion therefore requires the court to determine whether Maine's policy of giving comity to a sister state's sexual offender registration requirements is constitutionally impermissible as an ex post facto law, as cruel and unusual punishment, as double jeopardy, or as violating the plaintiff's due process rights, bearing in mind that "[a] statute is presumed to be constitutional and the person challenging the constitutionality has the burden of establishing its infirmity." *State v. Cosgro*, 2008 ME 64, ¶ 2, 945 A.2d 1221, 1222 (quoting *State v. Haskell*, 2001 ME 154, ¶ 3, 784 A.2d 4, 7).

B. Ex Post Facto Law

The United States Constitution provides that "[n]o State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. The Maine Constitution likewise provides, "The Legislature shall pass no . . . ex post facto law." Me. Const. art. 1, § 11. "[T]he ex post facto

4

clauses of the Maine and United States Constitutions are interpreted similarly and are coextensive." *Letalien*, 2009 ME 130, ¶ 25, 985 A.2d 4, 14. A "statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed," is an ex post facto law. *Id.* at ¶ 17, 985 A.2d at 12 (quoting *Collins v. Youngblood*, 497 U.S. 37, 42 (1990)).

The court notes that Allaire's charged conduct occurred in June 1999, before SORNA of 1999 became effective on September 18, 1999, though that statute was the governing law at the time that Allaire pleaded guilty in August 2000. *See* 4 P.L. 1999, ch. 437, § 2 (effective Sept. 18, 1999) (codified at 34-A M.R.S.A. §§ 11201-11252 (Pamph. 1999)). However, the fact that his crime occurred before the effective date of the statute does not automatically render the statute unconstitutional as an ex post facto law (*see Haskell*, 2001 ME 154, ¶¶ 6, 22, 784 A.2d at 8, 15); nor does the fact that the defendant's plea occurred after the effective date of the statute foreclose his argument that SORNA is unconstitutionally ex post facto, as the statute has been subject to numerous legislative amendments which have generally increased the burden on registrants. *See Doe v. District Attorney*, 2007 ME 139, ¶ 28, 932 A.2d 552, 561, *overruled in part by Letalien*, 2009 ME 130, 985 A.2d 4 ("We conclude that *Haskell* does not declare for all time that SORNA is immune from an ex post facto challenge. It is conceivable that a challenger can demonstrate that, through amendments, the Legislature changed the character and effects of SORNA from civil to criminal."). Indeed, the law court held in *Letalien* that the amended SORNA of 1999 placed unconstitutional ex post facto obligations upon registrants originally sentenced under SORA of 1991 or SORNA of 1995. *Letalien*, 2009 ME 130, ¶¶ 62-63, 985 A.2d 4, 26. In response to *Letalien*, the legislature issued "An Act To Further Amend the Sex Offender Registration and Notification Act of 1999," Public Laws 2010, Chapter 570, on an emergency basis, effective March 30, 2010.

Allaire contends that SORNA of 1999, as amended, remains unconstitutional as an ex post facto law. Following the thorough and careful examination of SORNA of 1999 undertaken by the law court in *Letalien*, this court will determine whether SORNA of 1999, as amended, is civil or criminal based upon on the portions of the statute that *Letalien* held unconstitutional, and review them in light of Allaire's claims stemming from his unusual situation (*but see Letalien*,

5

2009 ME 130, ¶ 63, 985 A.2d at 26 ("For ex post facto purposes, SORNA of 1999 is properly evaluated on its face, and not in relation to how it has been applied against any individuals")), and in light of the 2010 statutory amendments.

"If SORNA measures are deemed civil rather than criminal in nature, however, they do not implicate the Ex Post Facto Clause." *Haskell*, 2001 ME 154, ¶ 7, 784 A.2d at 8.

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty. In making this latter determination, the factors listed in *Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S. Ct. 554, 567-568, 9 L. Ed. 2d 644 (1963)*, provide useful guideposts, including: (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id. at 169, 83 S. Ct. at 568*, and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty.

*Id.* at ¶ 8, 784 A.2d at 8 (quoting *Hudson v. United States*, 522 U.S. 93, 99-100 (1997)). "[T]he Supreme Court has intimated . . . that the most significant question under the effects stage of the analysis is whether the law, 'while perhaps having certain punitive aspects, serves important non punitive goals.'" *Id.* at ¶ 9, 784 A.2d at 9 (quoting *United States v. Ursery*, 518 U.S. 267, 290, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996)).

The law court has repeatedly held that SORNA of 1999 "was intended by the Legislature to be a civil regulatory statute," noting "the Legislature's express statement that SORNA of 1999 is intended to 'protect the public from potentially dangerous registrants by enhancing access to information concerning those registrants,'" and that the Legislature "placed SORNA of 1999 entirely outside of the Criminal Code." *Letalien*, 2009 ME 130, ¶ 30, 985 A.2d at 16 (quoting 34-A M.R.S. § 11201 (2008)); *see also State v. Cosgro*, 2008 ME 64, ¶ 3 n.1, 945 A.2d 1221, 1223; *Doe*, 2007 ME 139, ¶ 27, 932 A.2d at 560; *Haskell*, 2001 ME 154, ¶ 12, 784 A.2d at 10.

6

Given that the law court's analysis is clear on this factor, Allaire's burden is also clear-cut: "one challenging a statute as imposing ex post facto punishment must demonstrate by the clearest proof that the statute is so punitive in purpose or effect as to overcome the Legislature's civil intent." *Cosgro*, 2008 ME 64, ¶ 2, 945 A.2d at 1222 (quotations omitted). With this standard in mind, the court turns to the analysis of the seven *Mendoza-Martinez* factors.

As to the first factor, "affirmative disability or restraint" (*see Mendoza-Martinez*, 372 U.S. at 168), the law court has determined that "quarterly, in-person verification of identity and location of home, school, and employment at a local police station, including fingerprinting and the submission of a photograph, for the remainder of one's life, is undoubtedly a form of significant supervision by the state," constituting a "disability or restraint that is neither minor nor indirect." *Letalien*, 2009 ME 130, ¶ 37, 985 A.2d at 18. The amendments to SORNA affect in-person registration requirements for those sentenced between January 1, 1982 and September 18, 1999, but the requirements for those sentenced after September 18, 1999, including Allaire, have not changed. P.L. 2010, ch. 570, § 2 (emergency, effective March 30, 2010). However, the *Letalien* court distinguished the applicable registration scheme from cases where the law had been held not to impose a restraint "because the relevant laws afforded offenders the opportunity to seek the early termination of the registration requirement." *Letalien*, 2009 ME 130, ¶ 37 n. 9, 985 A.2d at 18 (citing *Doe v. Pataki*, 120 F.3d 1263, 1284-85 (2d Cir. 1997), *amended on other grounds by* 120 F.3d 1263, 1285 (2d Cir. 1997) (addressing a duty to register in person every ninety days for a minimum of ten years); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 378 (N.J. 1995) (noting that the statute's lifetime registration requirements could be terminated early if an offender is offense-free for fifteen years and "can persuade the court that he or she is not likely to pose a threat to the safety of others")).

Public Laws 2010, Chapter 570 adds an exception to the registration requirement of 34-A M.R.S. § 11202-A (2009), which provides that a person

> is not required to register under this chapter if that person submits to the bureau, in a form to be determined by the bureau, documentation to establish . . . the person was sentenced in another jurisdiction, was finally discharged from the correctional system at least 10 years prior to submitting documentation to the bureau under this section and has been in compliance with the registration duties as a resident required under subchapter 2 since September 12, 2009.

P.L. 2010, ch. 570, § 1 (emergency, effective March 30, 2010). Because Allaire will be eligible to petition for removal from the sex offender registry, his situation is of the type that *Letalien*

7

distinguished. It is not at all clear that the statute, as modified, presents an affirmative disability or restraint for a registrant in Allaire's position.

Turning to the second *Mendoza-Martinez* factor, whether retroactive application of the law has historically been regarded as a punishment *(see Mendoza-Martinez*, 372 U.S. at 168), the *Letalien* court reached two separate conclusions. First, citing *Smith v. Doe*, 538 U.S. 84, 97-99 (2003), the law court held that that "Internet posting pursuant to SORNA of 1999 is not punitive in purpose or effect." *Letalien*, 2009 ME 130, ¶ 38, 985 A.2d at 19. The law court then examined Maine's unique legislative history and concluded that "retroactive application of SORNA of 1999 to offenders who were sentenced on or after June 30, 1992, and before September 18, 1999, should be regarded as punishment." *Id.* at ¶ 39, 985 A.2d at 19. This conclusion was due to the fact that the versions of the sex offender registration statutes in place between June 30, 1992 and September 18, 1999, "authorized sentencing judges, as part of the sentencing process, to waive an offender's duty to register," (*id.*), whereas SORNA of 1999 curtailed this exercise of judicial discretion. *Id.* at ¶¶ 42-43, 985 A.2d at 20. Because Allaire and others similarly situated were sentenced after the effective date of SORNA of 1999, this concern is not implicated. Application of the law to Allaire and those similarly situated has not been historically regarded as a punishment.

"The third factor asks whether the obligation to register according to SORNA is triggered only on a finding of *scienter*. In *Haskell* we concluded that it is not and that this factor supports SORNA being viewed as non-punitive." *Letalien*, 2009 ME 130, ¶ 44, 985 A.2d at 21 (citing *Mendoza-Martinez*, 372 U.S. at 168; *Haskell*, 2001 ME 154, ¶ 17, 784 A.2d at 12).

"The fourth factor requires consideration of whether SORNA of 1999 promotes retribution and deterrence, the traditional aims of punishment." *Id.* at ¶ 45, 985 A.2d at 21 (citing *Mendoza-Martinez*, 372 U.S. at 168). In *Smith v. Doe*, 538 U.S. 84, 102 (2003), the United States Supreme Court found that Alaska's SORNA was not punitive merely because the statute might deter future crimes, nor was it retributive, even though it was applied based upon the extent of the wrongdoing rather than the extent of the risk posed. In its analysis of Maine's SORNA, the law court considered this factor to be "neutral" as to its determination of whether SORNA is punitive. *Letalien*, 2009 ME 130, ¶ 46, 985 A.2d at 21. In the law court's view, the record before it provided little basis on which to assess the reasonableness of SORNA of 1999's disparate treatment categorizing some offenders as lifetime registrants and others as ten-year

8

registrants, or on which to determine "whether Maine's requirement of lifetime registration is reasonably related to the danger of recidivism." *Id.*

This court considers that the legislative provisions of Public Laws, Chapter 570 help to mitigate this disparity as to offenders who are categorized as lifetime registrants based upon actions undertaken prior to the effective date of SORNA of 1999, previously given no opportunity to petition for removal from the registry, regardless of their likelihood to reoffend. The amendments allow several groups of lifetime registrants to petition for removal from the registry, including (1) registrants sentenced in Maine between January 1, 1982 and June 30, 1992, who were finally discharged from the correctional system at least 10 years prior to their petition for removal; (2) registrants sentenced in Maine on or after June 30, 1992 and prior to September 18, 1999, who were finally discharged from the correctional system at least 10 years prior to their petition for removal; (3) registrants, like Allaire, who were sentenced in another jurisdiction, were finally discharged from the correctional system at least 10 years prior to their petition for removal, and who have been in compliance with the registration duties as a resident required under subchapter 2 since September 12, 2009; and (4) registrants sentenced in Maine on or after September 18, 1999 and prior to July 30, 2004 for a violation of former Title 17A, section 252 who were finally discharged from the correctional system at least 10 years prior to their petition for removal; any of whom must not have any other convictions before or since for a Class A sex offense or sexually violent offense. P.L. 2010, ch. 570, § 1 (emergency, effective March 30, 2010). It appears that the legislature, in amending the statute to create these exceptions, was attempting to create greater congruence between a registrant's likelihood to reoffend and the registrant's lifetime registration requirement. These alterations to the statute suggest that it is now less potentially punitive than it was at the time that the law court declared it to be neutral; therefore, this factor now weighs in favor of SORNA of 1999's not being punitive.

The fifth *Mendoza-Martinez* factor requires the court to consider whether the behavior to which SORNA of 1999 applies is already a crime. 372 U.S. at 168.

> Because registration under SORNA of 1999 only applies to offenders who were convicted of specified crimes, does not arise based on individualized assessment of an offender's risk of recidivism, and cannot be waived based on proof that an offender poses little or no risk, SORNA of 1999 applies exclusively to behavior that is already a crime. It is punitive in effect in this respect.

9

*Letalien*, 2009 ME 130, ¶ 48, 985 A.2d at 22 (citing *Smith*, 538 U.S. at 112-13 (Stevens, J., dissenting); *Doe v. Alaska*, 189 P.3d 999, 1015 (Alaska 2008)).

The court next considers the sixth *Mendoza-Martinez* factor, whether SORNA of 1999 has a rational connection to a non-punitive purpose. 372 U.S. at 168-69. The Supreme Court has intimated, in other cases, that this is the most significant question under the effects stage of the analysis: whether the law, "while perhaps having certain punitive aspects, serves important non punitive goals." *Haskell*, 2001 ME 154, ¶ 9, 784 A.2d at 9-10 (citing *United States v. Ursery*, 518 U.S. 267, 290 (1996); *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 873 (5th Cir. 2001) (stating that "'the most significant question under the effects stage of the 'intent-effects' analysis is whether the law 'while perhaps having certain punitive aspects, serves important nonpunitive goals.'"); *Russell v. Gregoire*, 124 F.3d 1079, 1091 (9th Cir. 1997), *cert. denied*, 523 U.S. 1007 (1998)); *see also Smith*, 538 U.S. at 102 ("The Act's rational connection to a nonpunitive purpose is a 'most significant' factor in our determination that the statute's effects are not punitive."). "There is no doubt that SORNA of 1999 serves a valid governmental purpose separate from punishment. The Legislature declared that SORNA of 1999 is intended 'to protect the public from potentially dangerous registrants by enhancing access to information concerning those registrants.'" *Letalien*, 2009 ME 130, ¶ 50, 985 A.2d 22 (quoting 34-A M.R.S. ß 11201 (2008)). "Protecting the public from potentially dangerous sex offenders is, without question, a compelling state interest in furtherance of the state's police powers. . . . The protection advanced by SORNA is among the most basic obligations state government owes its people--ensuring their safety." *Id.* SORNA advances these safety concerns "by alerting the public to the risk of sex offenders in their community." *Smith*, 538 U.S. at 103. This factor weighs against a conclusion that SORNA is punitive.

The seventh and final *Mendoza-Martinez* factor addresses whether SORNA of 1999 "appears excessive in relation to the alternative purpose assigned." 372 U.S. at 169. "The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105, *see also Letalien*, 2009 ME 130, ¶ 51, 985 A.2d at 22. "Reasonableness is an objective standard." *Letalien*, 2009 ME 130, ¶ 51, 985 A.2d at 22.

10

The law court treated this factor as neutral in its evaluation of SORNA of 1999 prior to the Chapter 570 amendments, finding that the court lacked sufficient information upon which "to gauge whether the regulatory means chosen—in particular, increasing the registration period from fifteen years [as it would have been under the prior version of SORNA] to life without the possibility of a waiver, and increasing the verification from infrequent notices to quarterly in-person reporting and fingerprinting at a police station—are reasonable in light of the law's non-punitive purpose." *Id.* at ¶ 52, 55, 985 A.2d at 23, 24. In conducting its analysis, the law court focused upon "the increased burdens resulting from SORNA of 1999's retroactive application to individuals who were originally subject to a fifteen-year registration period under SORA of 1991 or SORNA of 1995, but who are now subject to lifetime registration and quarterly in-person verification." *Id.* at ¶ 51, 985 A.2d at 22-23.

In the current circumstance, these concerns are no longer applicable. This court does not make a ruling on the excessiveness of SORNA of 1999, as amended, as applied retroactively to those sentenced under SORA of 1991 or SORNA of 1995, as that is not the case with which we are presented. The current case consists of a registrant sentenced in New Hampshire, who became subject to SORNA of 1999 when he resumed his Maine resident status after conviction of a registrable sex offense under New Hampshire law. Analyzing the amended statute, as the court must, on its face (*Mendoza-Martinez*, 372 U.S. at 169), a statutory scheme emerges where many registrants whose convictions are unique and more than ten years old may petition to be removed from the registry. *See* P.L. 2010, ch. 570, § 1 (emergency, effective March 30, 2010). Other registrants are ineligible for removal, including those with multiple sexually violent offense convictions or multiple convictions for Class A sex offenses. *Id.* On the record before this court, noting the limited application the court considers today, the court cannot conclude that SORNA of 1999, as amended, is excessive in relation to its purpose of promoting public safety by collecting and making available already public information regarding sex offense convictions.

Synthesizing its review of the *Mendoza-Martinez* factors, the law court held, in *Letalien*,

that the retroactive application of the lifetime registration requirement and quarterly in-person verification procedures of SORNA of 1999 to offenders originally sentenced subject to SORA of 1991 and SORNA of 1995, without, at a minimum, affording those offenders any opportunity to ever be relieved of the duty as was permitted under those laws, is punitive.

11

2009 ME 130, ¶ 62, 985 A.2d at 26. The concerns that led to the holding that SORNA of 1999 was established as punitive by the clearest proof, and therefore an ex post facto law, are not applicable to Allaire. The law court stated explicitly that its holding in *Letalien* was not applicable to registrants who were not sentenced under SORA of 1991 or SORNA of 1995:

> Because our decision is based to a substantial degree on the unique . . . history of Maine's sex offender registration laws and sentencing practices, we do not decide today the extent to which it applies to persons sentenced in jurisdictions other than Maine on or after June 30, 1992, and before September 18, 1999, who are required to register in Maine in accordance with SORNA of 1999.

*Letalien*, 2009 ME 130, ¶ 62 n. 17, 985 A.2d at 26. Allaire was not sentenced pursuant to either law, but to the law of New Hampshire, and fell within the ambit of SORNA of 1999 based upon his New Hampshire registration obligations. Allaire's case is thus more analogous to *Haskell*, where the law court "determined that the retroactive application of SORNA of 1999 to a crime that was committed on August 8, 1999, did not violate the ex post facto prohibition," because Haskell, like Allaire, committed the crime before the effective date of SORNA of 1999, but was sentenced after the effective date. *Haskell*, 2001 ME 154, ¶¶ 6, 22, 784 A.2d at 8, 16. *See also Letalien*, 2009 ME 130, ¶ 59, 985 A.2d at 25 (distinguishing *Haskell*, 2001 ME 154, ¶¶ 6, 22, 784 A.2d at 8, 16).

The law court's observation in *Letalien* that quarterly, in person, lifetime registration constitutes a "substantial disability or restraint on the free exercise of individual liberty" remains valid, but the legislative amendment allowing registrants to petition for removal from the registry lightens the impairment of liberty that the *Letalien* court found. *Letalien*, 2009 ME 130, ¶ 58, 985 A.2d at 24-25.

> It is not our role to ask whether the Legislature could achieve its goals through alternative means. Indeed, we properly exercise restraint in our review of a legislative effort to apply retroactively a civil regulatory scheme intended to address a complex public safety issue. We proceed with care so as not to interfere with innovative legislative efforts intended to advance the public interest, unless required otherwise by constitutional mandates.

*Letalien*, 2009 ME 130, ¶ 56, 985 A.2d 24.

Because Allaire has not demonstrated by the clearest proof that SORNA of 1999, as amended, is punitive and therefore a criminal law, his assertion that it is an ex post facto law must fail. His motion for summary judgment on this ground is DENIED. The defendants'

12

motion for summary judgment is GRANTED, as to persons convicted after the effective date of SORNA of 1999.

## C. Cruel and Unusual Punishment

The Eighth Amendment to the Constitution of the United States provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[2] Article 1, Section 9 of the Maine Constitution similarly provides, "Sanguinary laws shall not be passed; all penalties and punishments shall be proportioned to the offense; excessive bail shall not be required, nor excessive fines imposed, nor cruel nor unusual punishments inflicted." Because the court has determined that the registration requirements of SORNA of 1999, as amended, are not punitive as applied to persons sentenced after the statute's effective date, these constitutional provisions are not implicated. *See, e.g., Thun v. State of Maine,* 2009 U.S. Dist. LEXIS 66670 at *53 (D. Me. July 28, 2009) ("Thun has no viable Eighth Amendment challenge to his registration . . . requirements.") (citing *Cutshall v. Sundquist,* 193 F.3d 466, 477 (6th Cir. 1999) ("We have already concluded that the Act does not impose punishment; it is regulatory in nature. Therefore, it does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.")); *see also Johnson v. Terhune,* 184 Fed. Appx. 622, 624 (9th Cir. 2006) ("Requiring appellant to register as a sex offender did not violate the Ex Post Facto Clause, Double Jeopardy Clause or Cruel and Unusual Punishment Clause because sex offender registration is not punishment."); *Snyder v. State,* 912 P.2d 1127, 1131 (Wyo. 1996) ("Our determination that registration is not punishment is dispositive of Snyder's claim that it is cruel and unusual punishment . . . ."). Allaire's motion for summary judgment on this ground is accordingly DENIED. The defendants' motion for summary judgment is GRANTED, as to persons convicted after the effective date of SORNA of 1999.

## D. Double Jeopardy

"The double jeopardy provisions of the Maine and United States constitutions are coextensive and protect a defendant in a criminal matter, *inter alia,* from multiple *punishments* for the same offense." *State v. Smith,* 2002 ME 177, ¶ 2, 816 A.2d 57, 58; *see also Hudson v. United States,* 522 U.S. 93, 98-99 (1997) (explaining that the Federal Fifth Amendment Double

---

[2] Allaire's original motion for summary judgment cites the Fifth Amendment to the United States Constitution on this point.

Jeopardy Clause "protects only against imposition of multiple *criminal* punishments for the same offense, . . . and then only when such occurs in successive proceedings") (quotations and citations omitted). Because Allaire is subject to a regulatory scheme, rather than a criminal punishment, under SORNA of 1999, as amended, his claims must fail. *See also Haskell*, 2001 ME 154, ¶ 22, n. 12, 784 A.2d at 14-15 (collecting cases rejecting challenges to other states' sex offender registration laws on double jeopardy and other grounds, holding that registration requirement was not punishment). Allaire's motion for summary judgment on this ground is likewise DENIED, and the defendants' motion for summary judgment GRANTED.

E. Due Process

Allaire asserts that the application of SORNA of 1999, as amended, to him violates his right to due process. He argues, specifically, that it lacks substantive due process because it violates his fundamental rights to privacy and to "live wherever he wants within the four corners of the State of Maine." (Pl. Mot. Summ. J. 11.)

The law court has established a three-part test to determine whether a statute is invalid because it infringes upon due process rights.[3]

> The requirements of due process in the exercise of the State's police power are as follows:
> 1. The *object* of the exercise must be to provide for the public welfare.
> 2. The legislative *means* employed must be appropriate to the achievement of the ends sought.
> 3. The *manner of exercising* the power must not be unduly arbitrary or capricious.
> In order to successfully challenge the constitutionality of a statute on due process grounds, a party "must establish the complete absence of any state of facts that would support the need for its enactment."

*Aseptic Packaging Council v. State*, 637 A.2d 457, 461 (Me. 1994) (quoting *State v. Eaton*, 577 A.2d 1162, 1165-66 (Me. 1990)) (brackets omitted); *see also State v. Haskell*, 2008 ME 82, ¶¶ 5-6, 955 A.2d 737, 739.

In applying this test, the court first examines the objective of SORNA of 1999. "The purpose of [SORNA of 1999] is to protect the public from potentially dangerous registrants and offenders by enhancing access to information concerning those registrants and offenders." 34-A

---

[3] Article 1, Section 6-A of the Maine Constitution provides in pertinent part, "No person shall be deprived of life, liberty or property without due process of law . . . ."

M.R.S. § 11201 (2009). The first requirement of the due process test therefore supports the statute's validity.

In evaluating the second factor of the test, the propriety of the legislative means in light of the ends sought and the process alleged to be due, the court values federal jurisprudence under the Fourteenth Amendment to the U.S. Constitution.[4] "[F]ederal and Maine due process rights are coextensive." *State v. Milliken*, 2010 ME 1, ¶ 16, 985 A.2d 1152, 1157-58.

> Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.

*Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (quotations and citations omitted). "[T]he Fourteenth Amendment forbids the government to infringe 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 721 (quotations, emphasis and ellipses omitted). Thus, "by establishing a threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the [legislative] action, it avoids the need for complex balancing of competing interests in every case." *Id.* at 722.

The court's review of whether the legislative means are appropriate to the achievement of the ends sought accordingly depends upon whether the asserted right is a fundamental right, in which case the legislation requires more than a "reasonable relation to a legitimate state interest" to withstand a due process challenge. Allaire asserts that SORNA of 1999, as amended, infringes upon two fundamental rights—his right to privacy and his right to travel within the state of Maine.

The fundamental rights that have been upheld by the Supreme Court as "liberty" interests protected by the Due Process Clause include, "in addition to the specific freedoms protected by the Bill of Rights," *id.* at 720, "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to

---

[4] The Fourteenth Amendment to the U.S. Constitution provides in pertinent part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

15

abortion." *Id.* (citing *Loving v. Virginia,* 388 U.S. 1 (1967), *Skinner v. Oklahoma ex rel. Williamson,* 316 U.S. 535 (1942), *Meyer v. Nebraska,* 262 U.S. 390 (1923); *Pierce v. Society of Sisters,* 268 U.S. 510 (1925), *Griswold v. Connecticut,* 381 U.S. 479 (1965), *Eisenstadt v. Baird,* 405 U.S. 438 (1972), *Rochin v. California,* 342 U.S. 165 (1952), *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 851 (1992)). Courts must take care in interpreting assertions of fundamental rights; the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Id.* (quotations omitted). "By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action." *Id.* "We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court," rather than the elected legislature. *Id.* (quotations and citations omitted).

SORNA of 1999, as amended, provides the following information on the internet:

1) The registrant's name, date of birth and photograph;
2) The registrant's city or town of domicile and residence;
3) The registrant's place of employment and college or school being attended, if applicable, and the corresponding address and location; and
4) The statutory citation and name of the offense for which the registrant was convicted.

34-A M.R.S. § 11221, 9, A. Upon written request containing the name and date of birth of a registrant, the following information is accessible:

1) The registrant's name, aliases, date of birth, sex, race, height, weight, eye color, mailing address and physical location of domicile and residence;
2) The registrant's place of employment and college or school being attended, if applicable, and the corresponding address and location;
3) A description of the offense for which the registrant was convicted, the date of conviction and the sentence imposed; and
4) The registrant's photograph.

34-A M.R.S. § 11221, 9, B. The information that SORNA of 1999 makes public is therefore information intended to inform the public about the potential risk posed by the registrant and to allow the public the information necessary to recognize the registrant. The statute does not reveal information in which courts have recognized a potential privacy interest, such as financial or medical information. *Compare Borucki v. Ryan,* 827 F.2d 836, 840-49 (1st Cir. 1987) (reviewing cases and noting circuit split regarding right to privacy in psychiatric records) *with*

16

*Cutshall v. Sundquist*, 193 F.3d 466, 480-81 (6th Cir. 1999) (rejecting a constitutional right to non-disclosure of private information).

Allaire cites no authority for his proposition that disclosure of a matter of public record, the fact of his conviction, and of his identifying characteristics in order to render that status meaningful to the public, constitutes the infringement of a fundamental right. He cites a Maine Freedom of Access Act case, *Blethan Maine Newspapers, Inc. v. State*, for the proposition that "an individual has an interest in avoiding disclosure of personal matters," as well as "an interest in controlling the dissemination of personal information." 2005 ME 56, ¶ 15, 871 A.2d 523, 529. This precedent does not dictate the court's inquiry, as the context is distinguishable, and an "interest" is far from a "fundamental right." Moreover, in the context of sex offender registration laws, persuasive precedent exists suggesting that the disclosure of information sufficient for the public to identify a convicted sex offender does not implicate any fundamental right to privacy on the part of the registrant. *See A.A. v. New Jersey*, 341 F.3d 206, 211-13 (3rd Cir. 2003) ("this case begins with the understanding and, indeed, the requirement that what might otherwise be private information be made public . . . it is clear that a registrant's right to privacy in his or her home address gives way to the State's compelling interest to prevent sex offenses"); *see also Smith*, 538 U.S. at 101 (acknowledging the potential adverse effect of disclosure, but explaining that "consequences flow not from the Act's registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant . . .").

Given the Supreme Court's warning against expanding the universe of "fundamental rights" and the absence of precedent supporting a registrant's right to privacy in his or her identifying information, as well as SORNA of 1999's limitation of disclosed information to that which members of the public would need in order to take precautions, the court concludes that Allaire has no fundamental liberty interest in nondisclosure of his registry information.

His next asserted fundamental right is the right "to live wherever he wants within the four corners of the State of Maine," a right which he contends is unconstitutionally limited by local restrictions prohibiting sex offenders from residing near schools or other places where children

17

might gather. (Pl. Mot. Sum. J. 11.) As for SORNA of 1999, Allaire asserts that it is unconstitutional as the triggering mechanism for these local restrictions.

A fundamental constitutional right to live wherever one wants does not, and cannot, exist. If there were such a right, zoning laws creating non-residential zones would be constitutionally invalid if ever a person wished to reside in that area. Eminent domain would carry no meaning, because the government's right to the land would be on par with, or secondary to, an individual's fundamental liberty interest in living where he or she wishes. This is neither practicable nor the state of the law. The court therefore interprets Allaire's contention as an argument that SORNA of 1999 unconstitutionally limits his fundamental right to travel, a constitutional right that has been legally recognized.

> The "right to travel" . . . embraces at least three different components. It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State.

*Saenz v. Roe,* 526 U.S. 489, 500 (1999). "The cases applying the right to travel doctrine involve laws which distinguished between newcomers to a state, who were denied fundamental rights, and residents of longer duration, who were accorded such rights." *Salibra v. Supreme Court of Ohio,* 730 F.2d 1059, 1064-65 (6th Cir. 1984). "The right to travel doctrine has been applied only to cases involving the denial of 'vital benefits,' 'fundamental rights' or 'basic necessity of life.'" *Id.* at 1065 (quoting *Califano v. Torres,* 435 U.S. 1, 4 (1978); *City of Akron v. Bell,* 660 F.2d 166, 169 (6th Cir. 1981); *Hayes v. Board of Regents,* 495 F.2d 1326, 1328 (6th Cir. 1974)). "Fundamental rights" include, for example, the right to vote. *See id.* Because the time-limited posting of Allaire's identifying information and conviction on the registry for public protection does not deny him vital benefits, fundamental rights, or basic necessities of life, nor any inequality in treatment while in Maine based upon his recent residency status, his argument under the right to travel must fail.

Because Allaire has not established that SORNA of 1999, as amended, infringes upon any recognized fundamental right or liberty interest, the legislative means employed will be considered appropriate to the achievement of the ends sought as long as they are reasonably related to a legitimate state interest. *See Aseptic Packaging,* 637 A.2d at 461; *Glucksberg,* 521 U.S. at 720-21. The interest of public safety is reasonably related to the statute's provisions

18

making available information about convicted sex offenders in order that families and the public may take appropriate precautions. The second factor of the test therefore supports upholding the statute.

The third and final factor of the due process inquiry is whether the statute's implementation is arbitrary and capricious. "[A] court, in performing a rational-basis analysis, is not limited to the face of the statute and may go beyond its face in determining whether any *conceivable* state of facts exists to support a statute." *Aseptic Packaging*, 637 A.2d at 460. "It is for the legislature, not the courts, to judge the wisdom of legislative action and to evaluate legislative facts." *Id.* "The State has no burden to come forward with such conceivable state of facts, but rather, it is the contestant who retains the burden of proving that no conceivable state of facts exists." *Id.* (quotations omitted).

Allaire agrees that SORNA has been properly upheld on rational basis review in the past, but asserts that it should now be overturned because, as his conviction requiring registration was not a crime in Maine, he poses no threat and need not be on the registry. This argument does not meet the requirement of illustrating that no conceivable set of facts exists to support upholding SORNA of 1999, as amended.

Because Allaire has not met his burden, his motion for summary judgment asserting that SORNA of 1999, as amended, should be overturned on due process grounds is DENIED. The defendants' motion for summary judgment is GRANTED as to persons convicted after the effective date of SORNA of 1999.


The entry shall be:

Allaire's Motion for Summary Judgment is denied; the Defendants' Motion for Summary Judgment is granted.

This Order shall be noted on the Docket as incorporated by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

9/29/10
DATE

M/ MICHAELA MURPHY,
SUPERIOR COURT JUSTICE