STATE of Maine

v.

Sandra A. FREEMAN.

Supreme Judicial Court of Maine.

Argued Jan. 18, 1984.

Decided Feb. 12, 1985.

Gene Libby, Dist. Atty., Deborah A. Buccina, Asst. Dist. Atty., Alfred, Wayne S. Moss (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Reiner & Bouffard, Gary H. Reiner (orally), Dean K. Bouffard, Bruce W. Smith, Law Student, Kittery, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE,* WATHEN, GLASSMAN, and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Sandra Freeman, appeals the judgment of the Superior Court (York County) affirming her adjudication in District Court (Kittery) for the civil violation of operating a motor vehicle while having 0.10% or more by weight of alcohol in her blood or while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312–C. On this appeal she asserts error in the denial of her motion for transfer, and for trial by jury.

Freeman was adjudicated following a trial in District Court. She argues, *inter alia*, that, under the test of *State v. Anton*, 463 A.2d 703 (Me.1983), a civil OUI proceeding retains sufficient criminal characteristics to require its treatment as a criminal prosecution with the attendant constitutional safeguards. We conclude that, although the Legislature has made a

---

* Violette, J., sat at oral argument and participated in the initial conferences, but did not participate in the final decision.

good-faith attempt to "decriminalize" certain OUI cases, section 1312–C did not free this offense from the punitive consequences that characterize a criminal prosecution. Thus a prosecution under section 1312–C would require the constitutional protections of a jury trial and proof beyond a reasonable doubt afforded defendants in criminal cases. However, the Legislature obviously intended to create a civil proceeding. Given the simultaneous enactment of 29 M.R.S.A. § 1312–B, which is expressly declared to be criminal, it is clear that the Legislature did not intend to enact a parallel statute under which defendants would be entitled to the procedures of a criminal case, but whose sanctions are less onerous than those of section 1312–B. Since the Legislature never intended section 1312–C to exist in this form, we conclude that its purpose has been frustrated and that section 1312–C is void and of no effect. We vacate the judgment and remand for entry of an order dismissing the civil action based on section 1312–C.

## I.

■ Maine's present OUI law, enacted by P.L.1981, ch. 468, §§ 10 and 11, adopts a bifurcated approach. When a person has been arrested for a violation of 29 M.R.S.A. § 1312–B, criminal OUI, the attorney for the State may elect to charge the defendant with the traffic infraction of operating under the influence under 29 M.R.S.A. § 1312–C. The election is made by the District Attorney after the completion of the chemical testing and other procedures called for by 29 M.R.S.A. § 1312, the so-called "Implied Consent Law." Though the statute prescribes guidelines for the election in section 1312–C(7) and requires a criminal prosecution in aggravated cases, 29 M.R.S.A. § 1312–C(5), the District Attorney's election is not subject to review. 29 M.R.S.A. § 1312–C(1) and (7). The civil proceeding is denominated a "traffic infraction," for which there is no right to a jury trial. 29 M.R.S.A. § 1(17–C). Despite this distinction in procedures, the substantive offense is the same under both sections:

operating a motor vehicle while under the influence of intoxicants, or while having 0.10% or more alcohol in the blood. The clear intent of the Legislature was to provide the State an efficient, abridged method for disposing of OUI cases where the District Attorney finds no aggravating circumstances.

We have recognized that a legislative purpose to create a civil infraction will not succeed if the statute merely labels as "civil" an offense that is criminal in nature. *State v. Anton,* 463 A.2d at 706; *State v. Gleason,* 404 A.2d 573, 583 (Me.1979). We must inquire, therefore, whether this statute is so punitive, in either purpose or effect, that it negates the Legislature's intent to create a purely civil violation. *Anton,* 463 A.2d at 706 (citing *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)).

■ Under the present statutory scheme, an OUI defendant is subject to serious consequences even before the election is made. Every OUI proceeding is a criminal one until, and unless, the District Attorney elects to charge the defendant under section 1312–C. *See State v. Chubbuck,* 449 A.2d 347, 350 (Me.1982). While "all of the procedural and substantive rights ... applicable to criminal prosecutions generally" thus attach from the moment of arrest, *id.,* so do all of the detriments. And while the single circumstance of the prosecutor's election may strip away the protective rights, the choice of section 1312–C does not necessarily undo the "criminal" consequences that occur. Leading the list of determining factors is "whether the sanction involves an affirmative disability or restraint." *Anton,* at 706 (quoting from *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963)). "Imprisonment," we said "may not be imposed as a sanction for a civil offense." *Anton,* at 706. While imprisonment may not be imposed as a *punishment* for a violation of section 1312–C, a person ultimately charged under

section 1312–C is subject to pre-charging arrest and detention.

■ In determining that "speeding" had been validly made a civil infraction, we observed that, "the enforcement of criminal laws is generally characterized by arrest and detention," *Anton*, at 707, and further, that, "the fact that a motorist charged with a traffic infraction ... is not subject to a full-custody arrest comports with civil rather than criminal process." *Id.*, at 708. But here, the election to proceed civilly is not made until sometime after the arrest and detention. As the Oregon Supreme Court said in a similar context,

> [a] person thus arrested faces the possible use of physical restraints, such as handcuffs, a search of the person, booking (including the taking of fingerprints or photographs), and detention in jail.... Of course a traffic offender must be subject to being ·stopped, ... and in the case of apparent intoxication prevented from resuming his driving. Often that could be accomplished by other means. But detention beyond the needs of identifying, citing, and protecting the individual or "grounding" him, especially detention for trial unless bail is made, comports with criminal rather than with civil procedure and is surely so perceived by the public.

*Brown v. Multnomah Co. District Ct.*, 280 Or. 95, 570 P.2d 52, 60 (1977). The use of pre-charging arrest and detention is in direct conflict with the District Court Rules governing traffic infractions. Rule 80F provides that, "[t]he officer delivering the Uniform Traffic Ticket and Complaint shall not take the defendant into custody." M.D.C.Civ.R. 80F(b). Arrest and detention in the course of an adjudication of a section 1312–C violation strongly reflects the statute's criminal nature.

■ Coincident with the physical detention involved in the pre-charging procedure to which all OUI defendants are subject is the effect on one's reputation.

The stigma caused by criminal pre-charging procedures will not disappear when the prosecutor elects to charge a civil infraction. The fact of an individual's arrest is public information and in many communities will be reported in a newspaper before a charging decision is docketed. Arrested as a criminal suspect, the accused is not likely to escape stigma merely because the conviction is [later] labeled civil.

Note, *Constitutional Issues Raised by the Civil-Criminal Dichotomy of the Maine OUI Law*, 35 Me.L.Rev. 385, 411 (1983) (hereafter "Note, *Maine OUI Law*"). Indeed, the later adjudication will be for the identical conduct that section 1312–B defines as a crime. The Oregon court stressed the retention of criminal stigma in an Oregon civil OUI proceeding as indicating that there had not been a true decriminalization. *See Brown*, 570 P.2d at 59, cited in *Anton*, 463 A.2d at 708. While *Brown* was there concerned with the stigma attached to a severe *sanction*, the same considerations apply to a publicly-reported criminal charge and adjudication that the defendant engaged in the alleged conduct, even if an intervening election has been made to proceed civilly. We do not, by discussing this, suggest that no stigma appropriately attaches to the conduct; only that, in this case, it is highly suggestive of the true criminal nature of the procedure.

■ As well as affecting the defendant's standing in the eyes of the community, a section 1312–C adjudication has significant continuing official consequences. Not only must any subsequent OUI charge be brought under section 1312–B as a criminal offense, 29 M.R.S.A. § 1312–C(5)(D), but the punishment under that section must be enhanced because of the prior section 1312–C adjudication. Ordinarily, a section 1312–B conviction carries a mandatory 90-day license suspension. "In the case of a person previously convicted of violating subsection 10 of former section 1312, this section *or section 1312–C* within a six-year period [,] ... the suspension shall be for a period of one year." 29 M.R.S.A. § 1312–

B(2)(C) (emphasis added). Thus, a section 1312–C adjudication of liability carries the same weight for purposes of enhancement as a conviction under § 1312–B. By providing such a role for section 1312–C, the Legislature has given it a strongly criminal effect that tends to negate the Legislature's avowed purpose of creating a purely civil violation. *See Anton,* 463 A.2d at 706.[1]

The punitive consequences of a § 1312–C adjudication reach further than sentence enhancement in a subsequent OUI case. By section 2292 of Title 29, a "habitual offender," subject to immediate license revocation, is one who has had "three or more convictions or adjudications" of any of eleven defined offenses. "Operating or attempting to operate while under the influence of intoxicating liquor or drugs or with a blood-alcohol level of 0.10% or more" is one such offense. 29 M.R.S.A. § 2292(1)(B). The preliminary language, "convictions or adjudications," indicates that this includes both civil and criminal OUI offenses. Indeed the word "adjudications" refers only to § 1312–C adjudications, because not one of the other ten offenses listed in section 2292 is a civil violation. Civil OUI is the only civil violation which counts towards habitual offender status.

We said, in *State v. Anton,* that "a criminal sanction serves to 'punish' an individual for violating a legal norm, while civil sanctions serve to coerce, regulate or compensate." 463 A.2d at 706 (citing Clark, *Civil and Criminal Penalties and Forfeitures: A Framework for Constitutional Analysis,* 60 Minn.L.Rev. 379, 429–32, 475 (1976)). The aggregate effect of the 1312–C procedure, from pre-election arrest and detention through to its use as a component of the habitual offender offense, goes beyond the regulatory to the outright

punitive. It is a part of a larger statutory scheme that consistently treats all driving while intoxicated as a crime. *See* Note, *Maine OUI Law,* at 413.

Because it is, in reality, criminal, a section 1312–C proceeding would require a jury trial and the other guarantees afforded in all criminal cases by the Maine and Federal constitutions. *See, e.g.,* Me.Const. Art. I, § 6; *State v. Sklar,* 317 A.2d 160, 165 (Me.1974); *State v. Anton,* 463 A.2d at 705. Were it not a part of a larger statutory scheme, we might simply remand this case for a jury trial. *See Brown v. Multnomah Co. District Ct.,* 570 P.2d at 61. But it is clear that the Legislature did not intend that result.

II.

As noted above, sections 1312–B and 1312–C are part of a comprehensive scheme to combat the problem of intoxicated driving on Maine's roads. In section 1312–B the Legislature enacted a criminal statute with mandatory incarceration, a significantly higher fine, and a mandatory license suspension double the length of that imposed by section 1312–C. In section 1312–C, it intended to establish a faster and easier alternative to criminal prosecution. However, this Court here determines that, in its present form, the civil statute retains too many criminal attributes to achieve that purpose free of the overriding requirements of the constitution. The legislative purpose has been frustrated to that extent.

Because the statutes were enacted as a complementary scheme, we are persuaded that concurrent with the intent to create a civil violation was the intent not to create another criminal offense. Standing as a criminal statute, section 1312–C would afford defendants the constitutional safeguards of a criminal prosecution that the Legislature intended to preempt, yet would

---

1. We have previously upheld the discretionary enhancement of sentences meted out to recidivist defendants, *State v. Heald,* 382 A.2d 290, 298 (Me.1978); *Mottram v. State,* 263 A.2d 715, 726 (Me.1970), and we intend no erosion of that

judicial function today; nor do we intimate an opinion as to the propriety in general of mandatory enhancement of a criminal sentence based upon the previous violation of a civil statute.

also permit the avoidance of the minimum mandatory incarceration that the Legislature intended should follow a criminal OUI conviction. Neither legislative purpose would be served. Where the legislative intent has thus come to naught, we are unwilling to apply the statute in a way that the Legislature never intended. As a matter of the application of legislative intent, we conclude that section 1312–C is void and of no force and effect.

This decision should not be read to disapprove of the Legislature's good-faith effort to provide for non-criminal treatment of certain OUI cases. We are cognizant that section 1312–C was designed to achieve a socially desirable goal in a rational and efficient way. Nothing prevents such a decriminalization if it is fully carried out. Nevertheless, constitutional safeguards cannot be denied for the sake of legislative or judicial efficiency.

The entry is:

Judgment vacated.

Remanded to the Superior Court for entry of judgment as follows:

"Judgment of the District Court vacated; remanded to the District Court with directions to enter an order dismissing the civil proceeding under 29 M.R.S.A. § 1312–C."

All concurring.