SILVER, J.,
with whom ALEXANDER and JABAR, JJ., join, dissenting.
[¶ 85] We respectfully dissent because the requirements of SORNA of 1999 are punishment to those who have completed their sentences and paid back society long ago. As we have already learned, tragical *742 ly, here in Maine, the publication of names and pictures on the Internet is dangerous and dramatically affects the registrants’ lives. See Associated Press, 2 Sex Offenders Shot to Death in Their Homes, N.Y. Times, Apr. 17, 2006, at A14; Raja Mishra, Suspect May Have Wanted to Kill Others, Boston Globe, Apr. 25, 2006, at B2. Those who do not comply with the requirements of SORNA of 1999 face criminal sanctions similar to those imposed on defendants who violate conditions of release or probation. The requirements of SORNA of 1999, as they affect these Does, are ex post facto laws that violate the United States and Maine Constitutions. Nowhere else in the realm of laws is such an ex post facto violation permitted.
[¶ 86] We do not dispute that the requirements of SORNA of 1999 may be enforced on persons whose sentences have been imposed since the requirements of SORNA of 1999 took effect. The propriety of applying SORNA of 1999 to current offenders is not at issue in this appeal. What is at issue is whether, after a person’s sentence has been imposed, and after that sentence has been served, the State may add to the sentence new and onerous burdens and restrictions that were not authorized when the offender was sentenced. The constitutional requirements that govern this issue are not unique to SORNA of 1999. If the State can impose additional burdens and restrictions here, it can do it for completed sentences for any other crime that society decides, in hindsight, was not subject to tough enough sanctions the first time around.
I. UNITED STATES CONSTITUTION
[¶87] There are several reasons why SORNA of 1999 is punishment and violates the United States Constitution. A look at some of the Mendoza-Martinez factors shows that many of them weigh in favor of finding the statute punitive.
A. Affirmative Disability or Restraint
[¶ 88] We determined in State v. Letalien that “SORNA of 1999 [prior to the ch. 570 amendment] impose[d] a disability or restraint that is neither minor nor indirect” because “quarterly, in-person verification of identity and location of home, school, and employment at a local police station, including fingerprinting and the submission of a photograph, for the remainder of one’s life, is undoubtedly a form of significant supervision by the state.” 2009 ME 130, ¶37, 985 A.2d 4. Now, a lifetime registrant who was sentenced prior to September 18,1999, is only required to report in writing every ninety days and report in person every five years, unless there has been a change in address or appearance. 34-A M.R.S. § 11222(4-B) (2012). Admittedly, this is a lower physical burden on the offender than predecessor acts’ requirements that the offender report every ninety days in person. The level of state supervision, however, has not changed in a material way because the State still maintains and distributes the same amount of highly personal information about the offender.
[¶ 89] The effect of the registration and reporting requirements of SORNA of 1999 is substantially more burdensome than renewing a driver’s license. Most notably, if the offender fails to comply with the reporting provisions in SORNA of 1999, he exposes himself to criminal liability, which reflects the punitive effect of the statute. See 34-A M.R.S. § 11227(1) (2012) (providing that the first offense is a Class D crime). In comparison, if an individual chooses not to renew his driver’s license he is simply not permitted to drive. Although the changes to SORNA of 1999 have reduced the physical burdens on the offend *743 er, the State’s supervision and control over the offender have not been reduced. This supervision and control, as we recognized in Letalien, signifies the punitive effect of SORNA of 1999.
B. Historically Regarded as Punishment
[¶ 90] Labeling a law’s burden as civil instead of criminal does not reduce the level of punishment attached to the burden, nor should it reduce the constitutional protection connected to the burden.[15] Likewise, a burden that was imposed as part of a sentence does not become less punitive if it is later imposed as part of a regulatory requirement that parallels sentencing.
[¶91] In Letalien, we provided a detailed description of the evolution of the sex offender registry in Maine. 2009 ME 130, ¶¶ 4-12, 985 A.2d 4. One aspect of the registry that has evolved is its relation to sentencing procedures. Beginning in 1996, the registration requirements of SORNA of 1995 were imposed as part of a sentence. P.L.1995, ch. 680, § 4. Subsequently, the statute was amended to instruct the court to order convicted offenders to register at the time it imposed a sentence, but it was no longer “part of a sentence.” P.L.200B, ch. 711, § B-13. Although the statutory language removed the registry from the direct realm of sentencing, this change “did not, in itself, make the registration requirements less punitive or otherwise remove the constitutional infirmity.” Letalien, 2009 ME 130, ¶ 74, 985 A.2d 4 (Silver, J., concurring).
[¶ 92] The stigma associated with publication on the Internet is demonstrative of SORNA of 1999’s role as punishment and its punitive effects. See Smith v. Doe, 538 U.S. 84, 115-16, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (Ginsburg, J., dissenting) (noting that the public notification regimen of the registry “calls to mind shaming punishments once used to mark an offender as someone to be shunned”); Doe v. State, 189 P.3d 999, 1012 & n. 98 (Alaska 2008) (noting that the act of registering is not analogous to shaming, but the dissemination provision is analogous). The public does not have access to the pictures, home addresses, and work places of those convicted of robbery, arson, embezzlement, or any other crime. We acknowledge that there is a stigma connected to any criminal behavior and there often is retribution by the public against those who have committed crimes. However, in no other area of the criminal law do we allow the public to have access to such personal information. Because these Does have not committed additional sex crimes since they completed their sentences, they were not required to be on a registry when the registry system was first created. Placing them on the registry now forces them to face additional public ridicule. See Human Rights Watch, No Easy Answers: Sex Offender Laws in the US 78-79 (2007), available at http:// www.hrw.org/reports/2007/us0907/us0907 web.pdf (discussing the serious impact the dissemination of registration information has on the registrants).
[¶ 93] In State v. Freeman we found that the civil proceeding by which some OUI laws were enforced had punitive consequences of the type that characterize criminal prosecution. 487 A.2d 1175, 1176-77 (Me.1985) (finding the statute void because its purpose was frustrated). In our analysis of the civil OUI proceeding, we considered, in part, the effect that the pre-charging mechanism for OUI defendants had on one’s reputation. Id. at *744 1178.[16] In this consideration, we noted that the stigma from the pre-charging mechanism associated with the civil proceeding for the OUI offense paralleled the stigma associated with the criminal proceeding. Id. As a result, we found that the stigma was “highly suggestive of the true criminal nature of the procedure.” Id.; see also State v. Anton, 463 A.2d 703, 708 (Me.1983) (noting the lack of criminal stigma regarding the decriminalization of traffic offenses).
[¶ 94] Sex offenders who are required to register are subjected to stigma in part due to the underlying offense, but also in part due to the dissemination of information. The registry makes significant personal information readily available to the public.[17] The impact of this dissemination is heightened by the use of the Internet, thus correlating the dissemination “to the shaming and branding punishments used in colonial times.” Doe v. Dist. Attorney, 2007 ME 189, ¶55, 932 A.2d 552 (Alexander and Silver, JJ., concurring). As discussed below in relation to the traditional aims of punishment, the stigma associated with Internet publication has the potential to cause “retributive and vigilante violence against registrants.” Id. The historic connection to criminal sentencing and shaming, along with the retribution and deterrence discussed below, demonstrate SORNA of 1999’s punitive effect.
C. Traditional Aims of Punishment
[¶ 95] SORNA of 1999 promotes retribution and deterrence, especially as it relates to Does III, X, XIX, XXIII, and XLIII. Such characteristics are present regardless of the intent of the Legislature. As the Indiana Supreme Court said in its discussion of that state’s sex offender registration act:
It is true that to some extent the deterrent effect of the registration and notification provisions of the Act is merely incidental to its regulatory function. And we have no reason to believe the Legislature passed the Act for purposes of retribution — vengeance for its own sake. Nonetheless it strains credulity to suppose that the Act’s deterrent effect is not substantial, or that the Act does not promote community condemnation of the offender, both of which are included in the traditional aims of punishment.
Wallace v. State, 905 N.E.2d 371, 382 (Ind.2009) (quotation marks and citations omitted). Although we accept that SORNA of 1999 is not intended as retribution for sex offenders’ crimes, it has that effect, due, in part, to its tendency to stigmatize the registrant. As a result, “[i]t promotes community condemnation in its most extreme form: vigilantism.” Letalien, 2009 ME 130, ¶ 75, 985 A.2d 4 (Silver, J., concurring).
[1Í 96] As discussed in prior SORNA cases, and cited with concern by the Does in this case, acts of violence against those registered on the Maine Sex Offender Registry are not unknown. In 2006, “a Canadian man targeted and murdered two *745 Maine sex offenders, who[m] he had located on Maine’s registry website.” Doe, 2007 ME 139, ¶56 n. 21, 932 A.2d 552 (Alexander and Silver, JJ., concurring); see also Letalien, 2009 ME 130, ¶ 75, 985 A.2d 4 (Silver, J., concurring). More recent iterations of SORNA continue to invite the possibility of vigilantism by providing access to the registry via Maine’s registry website. The use of the Internet registries allows anyone, anywhere in the world, to have unlimited access to the information.
[¶ 97] In addition to exposing the offenders to acts of vigilantism, there is evidence that registries do not achieve their primary objective of protecting the public. See 34-A M.R.S. § 11201 (2012) (“The purpose of this chapter is to protect the public from potentially dangerous registrants and offenders by enhancing access to information concerning those registrants and offenders.”). See also Kristen M. Zgoba & Karen Bachar, National Institute of Justice, Sex Offender Registration and Notification: Limited Effect in New Jersey 2 (2009), available at https://www.ncjrs.gov/pdffilesllnijl225k02.pdf (finding that the sex offender registry did not reduce the number of rearrests for sex offenses or the number of victims of sexual offenses). Instead, the registry may promote criminally deviant behavior by socially isolating offenders. See J.J. Prescott, Do Sex Offender Registries Make us Less Safe?, Regulation, Summer 2012, at 50 (discussing the “negative collateral consequences” for registrants, including loss of social ties, that may cause an increase in criminal behavior). As Justice Brennan noted in Trop v. Dulles, “I can think of no more certain way in which to make a man in whom, perhaps, rest the seeds of serious antisocial behavior more likely to pursue further a career of unlawful activity than to place on him the stigma of the derelict, uncertain of many of his basic rights.” 356 U.S. 86, 111, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958) (Brennan, J., concurring). SORNA of 1999 clearly promotes retribution and deterrence by inadvertently creating an environment where the Does are stigmatized in a way that may invite violent attacks and stall rehabilitation.
D. Excessiveness
[¶ 98] SORNA of 1999 requires defendants convicted of statutorily specified sex offenses to register. 34-A M.R.S. § 11203(5)-(8) (2012). The registry widely disseminates information about all sex offenders convicted of these crimes. The only information provided to the public upon which it can determine the potential risk each offender poses, however, is the statutory citation and name of the offense that placed the offender on the registry. The registry, and therefore the public, does not take other factors into account, such as distinguishing between individuals “who have been evaluated by a clinical and forensic psychologist and determined to be at the lowest risk of reoffending, and those individuals who committed multiple crimes; victimized infants and toddlers; and tortured, maimed, or killed their victims.” Letalien, 2009 ME 130, ¶77, 985 A.2d 4 (Silver, J., concurring). By failing to distinguish among offenders, the registry exceeds its purpose of promoting public safety, making its effects on registrants punitive.
E. Evaluation of the Mendoza-Martinez Factors
[¶ 99] We do not determine whether a statute has a punitive effect based on the mere number of factors that demonstrate such effect. Instead, we assess these factors and their relative weight. See Doe v. State, 189 P.3d at 1018. The factors discussed here, as well as the majority’s discussion regarding whether the behavior is *746 already a crime, demonstrate that SORNA of 1999 has a punitive effect. Most notably, SORNA of 1999 imposes requirements that are historically regarded as punishment because of their connections to sentencing and the associated stigma. Additionally, the stigma associated with the registry subjects the offenders to retribution, which in turn promotes deterrence, which are traditional aims of punishment. Overall, these factors provide clear proof that the statute’s punitive effect overcomes the Legislature’s civil intent. See Smith, 538 U.S. at 92, 123 S.Ct. 1140 (setting forth the United States constitutional standard for determining criminality of sex offenders registry).
II. MAINE CONSTITUTION
[¶ 100] SORNA of 1999, as it applies to the Does, violates the Maine Constitution. The Maine Constitution provides an independent basis for decision, while the United States Constitution merely prescribes the minimum constitutional protections that states must afford their citizens.[18] We conclude that the Maine Constitution can be distinguished from the United States Constitution, and that SORNA of 1999 violates the Maine Constitution, even if it would pass muster under the United States Constitution. Compare Smith, 538 U.S. at 105-06, 123 S.Ct. 1140 (finding the Alaska sex offender’s registry constitutional pursuant to the United States Constitution) with Doe v. Alaska, 189 P.3d at 1003, 1007, 1019 (finding the Alaska sex offender’s registry unconstitutional pursuant to the state constitution).
[¶ 101] The placement of the Ex Post Facto Clause within the Maine Constitution, as compared to its placement in the United States Constitution, provides us a basis for applying a more heightened standard. In the Maine Constitution, the Ex Post Facto Clause is located in article I, section 11, which declares the personal rights of Maine’s citizens, while the federal Ex Post Facto Clause is located in article I, section 9, which describes the powers and limitations of the legislative branch of the federal government. Compare Me. Const, art. I, § 11 with U.S. Const, art. I, § 9, cl. 3. The placement of the clause in the Maine Constitution shows that the Maine Constitution establishes a right of the people to not be subject to ex post facto laws, unlike the clause’s placement in the United States Constitution, which merely prohibits Congress from enacting an ex post facto law as part of a list of limitations on the powers of Congress. The distinction leads to a significant consequence: to obtain a declaration that SOR-NA of 1999 is in violation of the prohibition on ex post facto laws in the Maine Constitution, the Does need to merely overcome the presumption of constitutionality; under the United States Constitution, they have to show the “clearest proof ’ that the statute is punitive despite the legislative intent to make it civil. See Smith, 538 U.S. at 92, 123 S.Ct. 1140.
[¶ 102] Here, the State argues that SORNA of 1999 is presumed to have a civil effect, and thus be constitutional. Our opinion in Freeman emphasizes that a statute such as SORNA of 1999, originally enacted as an explicitly criminal punishment, cannot change its criminal nature and its punitive purpose simply by changing its label and its citation. Further, as the prior discussion of the Mendoza-Martinez factors demonstrates, the statute’s punitive characteristics rebut any presumption that the SORNA of 1999 law is *747 somehow civil and non-punitive and thus compliant with the Maine ConstitutiQn’s prohibition on ex post facto laws. SORNA of 1999 exposes the registrants to a level of supervision, stigma, and penalty that is not contemplated by civil statutes. Similarly, it promotes the traditional aims of punishment by exposing the registrants to the same penalties as those newly convicted. Whether these factors provide the “clearest proof’ that the effect of the statute is punitive is immaterial to the analysis under the Maine Constitution. These factors show that there is no doubt that SORNA of 1999 has a punitive effect that successfully rebuts the presumption of constitutionality and makes SORNA of 1999 a criminal law.
[¶ 103] For all the foregoing reasons, SORNA of 1999 is a retroactive application of a criminal law, which punishes those who have paid their penalty to society. Thus, it violates the Maine and United States Constitutions. Accordingly, we would vacate the judgment of the Superior Court and remand for a declaration that the requirements of SORNA of 1999 cannot be imposed, retroactively, on the plaintiffs bringing this appeal.

. The issue of whether a burden is civil or criminal was discussed in further detail in State v. Letalien, 2009 ME 130, ¶¶ 73-74, 985 A.2d 4 (Silver, J., concurring).

. In State v. Freeman, in addition to stigma, we also considered that the defendant is still subject to arrest and detention and the "civil” charge enhances the charge and sentence of subsequent OUI violations. 487 A.2d 1175, 1178-79 (Me.1985).

. SORNA of 1999 provides the public access to each offender's name, date of birth, photograph, city or town of domicile and residence, address of employment, address of college or school, the statutory citation and name of the offense for which the registrant was convicted, and designation as a 10-year or lifetime registrant. 34-A M.R.S. § 11221(9)(A) (2012). Additional information, including the mailing address and physical location of a registrant’s domicile and residence, is easily available to the public through a written request. 34-A M.R.S. § 11221 (9)(B) (2012).

. A more in-depth ex post facto analysis pursuant to the Maine Constitution, rather than the United States Constitution, is provided in Letalien, 2009 ME 130, ¶¶ 66-72, 985 A.2d 4 (Silver, J., concurring).